501 P.2d 570

ZELLERBACH PAPER COMPANY, a California corporation, and Sinclair & Valentine Co., a Division of Martin-Marietta Corporation, a Maryland corporation, Appellants,

v.

The VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Appellee.

The VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Cross-Appellant,

v.

WEST COAST PRINTING COMPANY, INC., an Arizona corporation, Cross-Appellee.

No. 1 CA–CIV 1863.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 3, 1972.

Rehearing Denied Dec. 19, 1972.

302

Lewis & Roca, by Peter D. Baird and Douglas R. Chandler, Phoenix, for appellants and cross-appellees.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellee and cross-appellant.

JACOBSON, Judge.

This appeal and cross-appeal raise the question of whether the trial court on remand violated the mandate of this court entered in the case of Zellerbach Paper Company v. Valley National Bank, 13 Ariz.App. 431, 477 P.2d 550 (1970).

The procedural background of this appeal is as follows. On March 20, 1969, the trial court entered a judgment holding in essence that certain mortgages executed by West Coast Printing Company (West Coast), securing certain personal indebtedness of its sole stockholder, Leopold Ackerman, in favor of appellee, Valley National Bank of Arizona (Bank), were not in fraud of creditors. Appellants, Zellerbach Paper Company and Sinclair & Valentine Company (hereinafter collectively referred to as Zellerbach), as judgment creditors of West Coast, appealed from that judgment. This court in the case of Zellerbach Paper Company v. Valley National Bank, *supra,* reversed the judgment of the trial court and, after denial by the Supreme Court of Arizona of a petition for review, issued its mandate. On July 16, 1971, the trial court signed a final "Judgment on Mandate from Department A". Zellerbach filed a petition for special action in this court contending the July, 1971, judgment violated the mandate of this court. The Bank responded to this petition and filed a cross-petition also contending the July, 1971, judgment was in violation of the mandate.

This court declined to accept jurisdiction of the petition for special action or the cross petition, our order stating in part, "It may well be that a further appeal will disclose the necessary information". This is that "further appeal".

The controversy between the parties centers on the manner in which the trial court, in its judgment on remand, treated a mortgage on certain real property located in the state of Nevada. To properly understand this controversy further factual background is necessary.

On September 7, 1965, West Coast Printing Company executed five real estate mortgages in favor of the Bank securing approximately $11,000 of West Coast's corporate indebtedness [1] and $47,500 of the personal indebtedness of West Coast's sole stockholder, Ackerman. Four of these mortgages covered five parcels of real property located in Arizona and one mortgage covered a parcel located in Nevada. The Bank in the litigation which originally gave rise to these appeals, brought an action in Arizona seeking the foreclosure of the four Arizona mortgages. This original action, in addition to the mortgagees, joined the various lienholders and Zellerbach. In that action all defendants except Zellerbach were defaulted and judgment entered against them. Zellerbach counterclaimed in that action contending that the Bank's mortgages which purportedly secured Ackerman's personal debts constituted a fraud on creditors of West Coast and sought to have these mortgages, to the extent they secured that personal indebtedness, declared void as against such creditors. In addition, Zellerbach specifically alleged that "the real ·estate mortgage on the Clark County, Nevada, property, alleged in paragraph V of the First Claim of plaintiff's complaint is unenforceable to

the extent it is claimed to secure obligation under the Continuing Guaranty [the personal obligation of Ackerman]". Also the pretrial statement prepared by the Bank and Zellerbach stipulated that "[a]s security for the aforesaid promissory notes the plaintiff also holds a mortgage . . . on certain property located in or near Las Vegas, Nevada." At the trial of this matter the parties referred to "mortgages executed by West Coast Printing Company, Inc., on September 7, 1965", without separating the Arizona mortgages from the Nevada mortgage. As previously indicated the trial court found the issues in favor of the Bank and against Zellerbach concluding, "The Continuing Guaranty and the Mortgages executed by West Coast Printing Company, Inc. on September 7, 1965, were not outside of the corporate authority of West Coast Printing Company, Inc., nor were they *ultra vires*," and "Valuable consideration was given . . . for the execution of the . . . Mortgages on September 7, 1965."

In the meantime, on September 11, 1968, the Bank obtained an *in rem* judgment in Nevada foreclosing the September 7, 1965, mortgage covering the Nevada property. This Nevada judgment was for the entire indebtedness due from both West Coast and Ackerman. Zellerbach was not made a party to that Nevada proceeding. The Nevada judgment further provided that:

"[t]here is an existing second mortgage on said property, to secure a note in the sum of $50,000, with Shimmel, Hill, Kleindienst & Bishop, a Partnership, as Mortgagees; and that second mortgage . . . is subordinate only to the first mortgage of Plaintiff herein." [2]

After reversal of the Arizona judgment, the trial court, on remand, entered its

1. The validity of the principal amount due under this mortgage is not questioned by Zellerbach and our previous opinion specifically provided that "Nothing herein is to be construed as affecting the validity or priority of the mortgages to the extent necessary to secure West-

Coast's $11,000 debt to the bank." 13 Ariz.App. at 436, 477 P.2d at 555.

2. Shimmel, Hill, Kleindienst & Bishop also held mortgages on the Arizona properties and were among the defaulted defendants in the Arizona action.

judgment on July 15, 1971, which provided, among other things:

"The Plaintiff obtained an 'in rem' judgment of foreclosure against the Nevada property on September 11, 1968, and the rulings in this Court do not purport to affect the judgment or subsequent foreclosure proceedings in the Nevada court."

And:

"that [Zellerbach] have no further claim in this action to any of the proceeds of the sale of the Nevada property . . . ."

However, the judgment went on to provide that:

"[u]nder the principle of marshalling of assets that Plaintiff, prior to satisfying its judgment against the Arizona properties, shall sell the Nevada property and that the proceeds realized therefrom be first applied in satisfaction of the amounts owing under the West Coast Printing Company, Inc. note [principal sum of $11,000 plus interest, attorney's fees and costs]. Thereafter, any of the foregoing sums left unsatisfied may be realized from the Arizona properties prior to the liens of [Zellerbach]. Thereafter, if all said sums have been satisfied out of the returns from the sale of the Nevada property, [Zellerbach] shall have the prior right to satisfy their liens against the Arizona properties described above."

In addition, the trial court granted interest to the Bank during the time the prior appeal was pending, allowed the Bank costs for the title search and denied Zellerbach costs incurred in the trial court.

The effect of the trial court's judgment is to allow the Bank to apply any sums realized from the sale of the Nevada property in excess of the $11,000 corporate debt of West Coast to satisfaction of the personal obligation of Ackerman, but prohibits

the Bank from applying the entire sale proceeds of the Nevada sale to the Ackerman debt and seeking satisfaction of the West Coast indebtedness from the Arizona properties. Zellerbach has appealed from that portion of the judgment allowing the Bank to apply the Nevada sale proceeds to the Ackerman indebtedness and the Bank has cross-appealed from that portion of the judgment requiring it to first satisfy the West Coast debt out of these Nevada proceeds.

Both parties agree that this appeal is determined by whether our previous opinion determined the validity of the Nevada mortgage securing the Ackerman debt, the Bank contending it couldn't and didn't; Zellerbach contending it could and did.

Our review of the issues raised on a second appeal of a case previously decided is severely limited. As was stated in Steinfeld v. Zeckendorf, 239 U.S. 26, 36 S.Ct. 14, 60 L.Ed. 125 (1915):

"[T]he question now is not whether this court was right or wrong, but what it did."

Also *see* United States v. Camou, 184 U.S. 572, 22 S.Ct. 505, 46 L.Ed. 694 (1902). Therefore, the question before this court is not whether our previous decision could determine the validity of the Nevada mortgage given to secure the Ackerman debt, but whether, right or wrong, such a determination was made.[3] The second question then becomes, if our previous decision determined that the Nevada mortgage securing the Ackerman debt was in fraud of creditors, did the trial court properly follow our mandate in its judgment?

■■ Turning to the first question, we note that, in the trial court, Zellerbach's counterclaim clearly put in issue the validity of the Nevada mortgage. We further note, that while the trial court's judgment found that Zellerbach had failed to sustain its claim of fraud of creditors, the trial

---

**3.** *See* Miller v. Kearnes, 45 Ariz. 548, 46 P.2d 638 (1935), holding that the courts of Arizona had the power to cancel a mortgage on property in California where *in personam* jurisdiction was obtained over all parties to the mortgage.

court did consider the Nevada mortgage in requiring the Bank to marshall assets liquidating the Nevada property first. We therefore have no hesitancy in determining that the trial court did determine that the Nevada mortgage was valid. At this point, at least, the issue of the validity of the Nevada mortgage was an issue on appeal. Likewise, upon reading our previous opinion, we have no hesitancy in holding that this mortgage was also declared by this court to be void as in fraud of creditors. We first note that our previous opinion stated:

"... West-Coast was to give the bank mortgages on six parcels of corporate property which were to secure both Ackerman's and West-Coast's debts to the bank. Five parcels of realty were located in four different counties of this state *and the other parcel was in Nevada.*" (Emphasis added.) 13 Ariz.App. at 432, 477 P.2d at 551.

This opinion, in reaching a determination that West Coast "was rendered insolvent as a result of the continuing guaranty and the *mortgages*", pointed out:

"Bearing this in mind, we find that one of the pieces of realty, located in Las Vegas, was carried on the books at $61,000. The uncontradicted evidence was that as of September 7, 1965, this property was worth less than $25,000. Thus, the assets on that date dropped over $35,000 in value. The Las Vegas property, together with the five other properties in Arizona, were mortgaged, thus depleting West-Coast's assets even more." 13 Ariz.App. at 434, 477 P.2d at 553.

While Judge Donofrio does state in the prior opinion "It is to be noted that the bank obtained a foreclosure judgment on the Nevada property, which is of no concern to the issues herein", (13 Ariz.App. at 432, 477 P.2d at 551), we are of the opinion that the court meant that it was the foreclosure proceedings which were of no concern rather than the Nevada mortgage, for, as pointed out above, the court used the valuation of the Nevada property in deciding vital issues of that appeal. We therefore hold that the issue of validity of the Nevada mortgage insofar as it secured Ackerman's debt was passed upon by our previous opinion and was held to be void as in fraud of creditors.

■ Did the trial court follow our previous opinion in entering its judgment on remand? We believe not. The law is well settled that the final opinion of an appellate court is binding upon the trial court which is "absolutely without jurisdiction to render a judgment differing in one jot or tittle from that which [the appellate court] directed it to render." State v. Griffith, 54 Ariz. 436, 441, 96 P.2d 752, 754 (1939). Also *see* State v. Federico, 104 Ariz. 49, 448 P.2d 399 (1968); Rogers v. Ogg, 101 Ariz. 161, 416 P.2d 594 (1966); Tucson Gas & Electric Co. v. Superior Court, 9 Ariz.App. 210, 450 P.2d 722 (1969).

■ The trial court by its judgment allowed the Bank to use the Nevada corporate property of West Coast to satisfy the personal obligation of Ackerman. This is in direct contravention of our previous opinion that such a use is in fraud of creditors and that insofar as the creditors Zellerbach were concerned such a security interest to the Bank was null and void. In this regard the trial court misinterpreted and thus failed to follow our previous decision and for this reason the matter must be reversed.

■■ The Bank argues, however, that if the trial court applies the Nevada sale proceeds in excess of the West Coast debt to Zellerbach, then such a determination affects the interests of Shimmel, Hill, Kleindienst & Bishop whose rights in the Nevada property are secured by the Nevada foreclosure judgment and who are not parties before this court. Sidestepping the "our decision, right or wrong" theory previously advanced, we are of the opinion that the Bank has no standing to raise this issue. Shimmel, Hill, Kleindienst & Bishop were parties to the Arizona litigation and had the opportunity, if they so desired,

to raise the issue of their interest in the proceeds of the Nevada foreclosure. This they failed to do. Having foregone the opportunity to litigate this issue, the Bank may not do so in their behalf. *See* Mosher v. Conway, 51 Ariz. 275, 76 P.2d 231 (1938). Moreover, our decision does not affect the interest of Shimmel, Hill, Kleindienst & Bishop in the Nevada property. Our opinion had, and now has, the effect of compelling a party, over whom this court has *in personam* jurisdiction, to apply the *proceeds* of the sale of mortgaged property in a certain manner. The Nevada judgment gave Shimmel, Hill, Kleindienst & Bishop no interest in these proceeds and their failure to litigate such an interest precludes them from doing so at this time. Our opinion leaves Shimmel, Hill, Kleindienst & Bishop, insofar as the Nevada property is concerned, in the same position we found them—the right to look to the Nevada property in satisfaction of their mortgage, *after* the sale proceeds of the sale securing the first mortgage are used by other persons.

Zellerbach has also attacked the trial court's judgment in the following respects:

(1) Allowing the Bank to collect the amount expended for a title search on the Arizona property in the sum of $243.60,

(2) Denying Zellerbach its costs in the trial court,

(3) Allowing the Bank interest on the West Coast debt pending appeal, and

(4) Awarding the Bank attorney's fees based upon the computation of interest pending appeal.

■ As to items (1), (3), and (4), the judgment obtained by the Bank against West Coast (which judgment was not affected by the previous appeal) provided for both costs of a title search and interest. The previous appeal by Zellerbach did not affect that judgment and the same is *res judicata*. The trial court therefore correctly allowed these items.

■ As to Item 2, Zellerbach on its previous appeal was only partly successful, the appellate court upholding the validity of the West Coast mortgages as against creditors.

A.R.S. § 12–342, subsec. A provides:

"On an appeal by the party against whom judgment was given in the court below, if the judgment of the appellate court is against him, but for a lesser amount, he shall recover costs in the appellate court, but shall be adjudged to pay costs in the court below."

The trial court correctly applied this statute in denying Zellerbach its costs incurred in the trial court.

■ We turn now to the Bank's crossappeal questioning the trial court's holding on marshalling of assets. Again we note that the trial court's original judgment in this matter which was the subject of our previous opinion, stated in part:

"Principles of equity require a marshalling of assets held by Plaintiff as security for the payment of both Promissory Notes and Continuing Guaranty to the extent that Plaintiff shall first apply the security foreclosed in the State of Nevada to the satisfaction of both Promissory Notes and Continuing Guaranty before applying thereto the Arizona property."

On remand, the trial court's judgment limited the Bank to satisfaction only of the West Coast debt from the Nevada property and did not allow the satisfaction of the Ackerman debt first from this property. It is from this portion of the judgment that the Bank appeals.

The Bank's first argument is closely allied with its argument in connection with Zellerbach's appeal, that is, that our previous opinion did not adjudicate the validity of the Nevada mortgage and therefore the trial court was without jurisdiction to require marshalling of assets in the manner it did. As we have seen, we have held against the Bank on this aspect of the litigation.

The second argument advanced by the Bank is that the trial court did not apply the correct law of marshalling of assets in requiring it to satisfy first the West Coast indebtedness from the Nevada sale proceeds. In this regard, the Bank cites 53 Am.Jur.2d, Marshalling Assets, § 13, at 17–18, which states:

"The doctrine of marshalling will not be given effect so as to injure or prejudice the creditor who has the double security, put his claim in jeopardy, or prevent him from having complete satisfaction.

"In protecting the junior creditor's claim, the court cannot lessen the senior creditor's security or vary his contract, except insofar as waiting a short time to ascertain the value of the securities can be considered as having that effect.

"The creditor who seeks to invoke marshalling must show that the rights of his co-creditor will be neither endangered nor injuriously affected, and that there is no reasonable doubt of the availability of another fund to satisfy his co-creditor's demand."

From this general statement of the principles of marshalling assets, the Bank contends the trial court's judgment in effect strips it of the benefits of the Nevada judgment. This argument is, of course, founded on the proposition that as against creditors of West Coast the lien on the Nevada property to secure the Ackerman debt is valid. We have held that such lien is not valid and therefore as against Zellerbach the bank holds no security for the Ackerman debt. The Bank and Zellerbach then stand in relation to each other of holding security of their joint debtor on Arizona property, the Bank having the first lien and Zellerbach holding a second lien on such property, and the Bank has a lien on property in Nevada belonging to that same creditor in which Zellerbach has no lien interest. Under the principle of marshalling assets previously quoted, the trial court correctly directed the Bank to satisfy its debt against the joint debtor

from property in which the junior lien-holder has no interest. This portion of the trial court's judgment is therefore affirmed.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and this matter is remanded with directions to the trial court to order the Bank to apply the proceeds from the sale of the Nevada property in excess of the West Coast debt, principal, interest, costs and attorney's fees to the satisfaction of the Zellerbach liens in the amount and in the order previously determined by the trial court.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concur.