Mary Ann JORDAN, Petitioner/Appellee,

v.

Donald E. JORDAN, Respondent/Appellant.

No. 15859–PR.

Supreme Court of Arizona, En Banc.

March 16, 1982.

Rehearing Denied April 27, 1982.

William J. Redondo, Tucson, for petitioner/appellee.

Slutes, Browning, Slaket & Sakrison by James M. Sakrison, Jane L. Eikleberry, Tucson, for respondent/appellant.

FELDMAN, Justice.

This marriage dissolution action presents the novel question of whether a trial court may deviate from the mandate of an appellate court because of an intervening change in controlling law and, on remand, decide the case contrary to the instructions contained in that mandate. The court of appeals held that the trial court was without jurisdiction so to do and reversed. *Jordan v. Jordan*, 132 Ariz. 51, 643 P.2d 1021 (App.1981). We granted appellee wife's petition for review.

The parties were married in 1959 and lived in Oklahoma before moving to Arizona. In 1972, they bought a residence in Tucson, taking title as joint tenants with right of survivorship. At that time, Arizona law provided that courts had no jurisdiction to apportion joint tenancy property in dissolution proceedings. *Becchelli v. Becchelli*, 109 Ariz. 229, 508 P.2d 59 (1973). In 1973, after *Becchelli*, the legislature amended A.R.S. § 25–318 to provide that on dissolution of marriage the court had jurisdiction to include joint tenancy property in an equitable division of marital property.[1] In 1975, the wife filed a petition for dissolution in Pima County Superior Court.

In the initial dissolution hearing, the trial court assumed jurisdiction over the joint tenancy property and awarded it to the wife. To offset the award of the residence to the wife, the trial court awarded certain community property to the husband. The trial court also made an award of spousal maintenance to the wife. The husband appealed, challenging the division of property and the award of spousal maintenance.

In an unpublished memorandum decision rendered in 1979, the court of appeals, per Richmond, Judge, held that the 1973 amendment to A.R.S. § 25–318 operated only prospectively and, therefore, joint tenancy property acquired before the effective date of the amendment was not subject to equitable division. The court stated:

> Because the joint tenancy residence cannot be awarded to appellee [wife] as her sole and separate property, the matter must be remanded. Inasmuch as appellant [husband] was awarded certain community assets to offset the award of the residence, the division of other property must be reconsidered (footnotes omitted).

The husband moved for rehearing; it was denied, and he petitioned for review. We denied this petition on December 4, 1979. The mandate then issued from the court of appeals to the trial court. The court of appeals reversed the portion of the trial court's decree which pertained to the division of property and the case was remanded for further proceedings. In all other respects the decree was affirmed.

Between the date of the court of appeals' mandate and the trial court's reconsideration of the property division, in what, we assume, would have been obedience to that mandate, the statute was amended again. The 1980 amendment gave the statute prospective and retrospective operation, thereby conferring jurisdiction on the trial court

---

1. The statute read as follows after the 1973 amendment:

 § 25–318. Disposition of property
 In a proceeding for dissolution of the marriage, ... the court shall ... also divide the community, *joint tenancy,* and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct [emphasis supplied].

to make an equitable division of joint tenancy property even though the property had been acquired before 1973, the date of the first amendment to the statute.[2]

Thus, when the trial court sat to obey the dictates of the mandate from the court of appeals, the legislature had given it jurisdiction to do that which the court of appeals had held it could not do—include the joint tenancy home in the equitable division of the marital property.

■ Accordingly, the trial court ordered that "in light of the change in the statute the original decree of dissolution which had been entered on August 21, 1978, ... 'is hereby confirmed and validated.'" Thus, for the second time, the trial court awarded the joint tenancy residence to the wife with an offset of community property to the husband. The husband again appealed. By opinion filed December 17, 1981, the court of appeals, 132 Ariz. 51, 643 P.2d 1021, held that the trial court still lacked jurisdiction to make an equitable apportionment of the joint tenancy property. The holding was based entirely on the theory that by applying the 1980 amendment to the statute the trial court had ignored the mandate of the first appeal. Stating that "[a] remand sends a matter back to the body from which it came where further action will be limited by the terms of the mandate," the court of appeals ruled that when there is a "specific remand with specific directions" the lower court is without jurisdiction to enter a judgment which varies from the one it has been ordered to enter. Although we approve this statement as a general rule, we do not agree with its application to this unusual situation and, therefore, vacate the opinion of the court of appeals and affirm the trial court.

At the outset, we acknowledge that the trial court's ruling on remand conflicted with the mandate rendered after the first appeal. We acknowledge also numerous Arizona cases holding that on remand the lower tribunal has no choice but to enter a judgment which complies exactly with that which the higher court has ordered. *E.g., Sun City Water Co. v. Arizona Corp. Commission,* 113 Ariz. 464, 466, 556 P.2d 1126, 1128 (1976); *Tovrea v. Superior Court,* 101 Ariz. 295, 297, 419 P.2d 79, 81 (1966); *Harbel Oil Co. v. Superior Court,* 86 Ariz. 303, 306, 345 P.2d 427, 429 (1959); *State v. Griffith,* 54 Ariz. 436, 441, 96 P.2d 752, 754 (1939); *Scates v. Arizona Corp. Commission,* 124 Ariz. 73, 75, 601 P.2d 1357, 1359 (App. 1979); *Zellerbach Paper Co. v. Valley National Bank,* 18 Ariz.App. 301, 305, 501 P.2d 570, 574 (1972); *Tucson Gas & Electric Co. v. Superior Court,* 9 Ariz.App. 210, 213, 450 P.2d 722, 725 (1969). "To hold otherwise would be to strip judicial proceedings of their dignity and respect, while creating a circular process that would provide no end to litigation ...." *Tovrea v. Superior Court,* 101 Ariz. at 297, 419 P.2d at 81. Nevertheless, none of these cases involves a situation where there has been a change in controlling law between the date of the mandate and the date of the trial court's reconsideration of the case.

The cases cited above present situations in which the trial court allegedly had attempted to substitute its view in lieu of the instructions contained in the mandate from the higher court. Each of the cases correctly holds that the trial court could not act in violation of the mandate. However, the general rule that the lower tribunal must follow the mandate of the higher court is part of the doctrine of the "law of the case."[3] *E.g., Banco Nacional de Cuba v.*

2. The 1980 amendment retained the language quoted in note 1 supra, but changed the title of the statute and added several subsections. Following are the changes relevant to the issues presented by this case:

§ 25–318. Disposition of property; *retroactivity*

\* \* \* \* \* \*

D. The provisions of this section, as added by Laws 1973, ... apply through both

prospective and retrospective operation to property without regard to the date of acquisition [emphasis supplied].

3. "The term 'law of the case' denotes the principle that if an appellate court has ruled upon a legal question and remanded for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same

*Farr*, 383 F.2d 166, 178 (2d Cir. 1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968). Courts have not given this doctrine the same conclusive effect as the doctrine of *res judicata*. *Compare Stuart v. Winslow Elementary School District No. 1*, 100 Ariz. 375, 414 P.2d 976 (1966) (an erroneous judgment is conclusive between the parties) *with Employers Mutual Liability Insurance Co. v. Industrial Commission*, 115 Ariz. 439, 565 P.2d 1300 (App. 1977) (law of the case inapplicable if different evidence is provided at the second hearing).

Thus, the general rule that the mandate must be followed has always had its exceptions. In Arizona, application of the general principle has been conditioned upon the proviso that the facts and issues on the subsequent proceedings after remand must be substantially the same as those on which the first decision rested. *See Commercial Credit Co. v. Street*, 37 Ariz. 204, 207, 291 P. 1003, 1004 (1930). The applicability of the "law of the case" doctrine has been limited to instances where the evidence on the second proceeding is substantially the same as that of the first. *Beliak v. Plants*, 93 Ariz. 266, 267, 379 P.2d 976, 977 (1963).

If on the new hearing the *facts* are not shown to be different, then the conclusion is that the [Industrial] Commission must follow the law already applied [by the appellate court] to substantially identical facts.... Correspondingly, if different evidence is presented in the hearings *de novo*, then the factual matters should be evaluated against this new evidence and the law of the case might well not be applicable since *its application is conditioned upon substantial identicality of facts, issues and evidence.*

*Employers Mutual Liability Insurance Co. v. Industrial Commission*, 115 Ariz. at 442, 565 P.2d at 1303 (emphasis supplied).

If the trial court has power to apply different law when the facts have changed, we must, then, consider whether the trial

court can apply different law when the law changes between the date of the mandate and the date of the new hearing held in obedience to that mandate. Before discussing this question, it is necessary to deal with the use of the word "jurisdiction" in the numerous Arizona cases already cited and which, in different situations, state that a trial court is "without jurisdiction" to stray from the mandate of the higher court. Arizona authority indicates that the use of the word "jurisdiction" in the law of the case rule is incorrect. In *State v. Maxwell*, 19 Ariz.App. 431, 508 P.2d 96 (1973), Division One of the Court of Appeals considered whether a criminal defendant was entitled to a trial court hearing on the question of whether, at the time of his guilty plea, he had been given the rights to which he was entitled under the rule of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). On defendant's first appeal, Division Two of the Court of Appeals had held that Maxwell could not seek appellate review of his guilty plea on alleged *Boykin* defects without first petitioning the trial court to set aside the plea. *State v. Maxwell*, 13 Ariz.App. 281, at 282, 475 P.2d 766, at 767. This ruling became final. Thereafter, the trial court held a hearing and denied defendant's motion to withdraw his guilty plea. Defendant filed a second appeal from this denial. On the second appeal, no record of the trial court proceedings could be obtained because the court reporter had left the jurisdiction, taking his notes with him. Defendant contended on the second appeal that since it was the law of the case that the determination of his *Boykin* rights must initially be made in the trial court and since the transcript of the trial court proceedings was unavailable for review, the case must be sent back to the trial court for another *Boykin* hearing. The second appeal was decided by Division One of the Court of Appeals. Between the date on which the first appeal became final and the decision of the second appeal, we held in a different

---

case." *Employers Mut. Liab. Ins. Co. v. Industrial Comm'n*, 115 Ariz. 439, 441, 565 P.2d

1300, 1302 (App.1977).

case, *State v. Sullivan*, 107 Ariz. 98, 482 P.2d 861 (1971), that an appellate court could determine the *Boykin* issue without first requiring defendant to petition the trial court to set aside the plea. Maxwell claimed that Division One of the Court of Appeals was bound by the decision of Division Two in the first appeal, because that decision had become final and was "the law of the case." Division One disagreed, holding that:

> "the law of the case doctrine is a *procedural rule which is generally followed, not because the court is without power to reconsider a former determination*, but because the orderly processes of judicial procedure require an end to litigation. In the absence of exceptional circumstances of hardship and injustice the need for attributing finality to considered judicial determinations compels the adherence to the previous decision. But the rule should never be made the instrument of injustice. Thus, where the controlling rules of law have been altered or clarified in the interval between the first and second appeal and adherence to the previous decision would result in defeating a just cause, it has been held that the court will not hesitate to reconsider its prior determination." *State v. Maxwell*, 19 Ariz.App. at 435, 508 P.2d at 100 (quoting *Gore v. Bingaman*, 20 Cal.2d 118, 122–23, 124 P.2d 17, 20 (1942)) (emphasis supplied).

Thus, Arizona has already recognized that notwithstanding the use of the word "jurisdiction" in the law of the case doctrine, an appellate court is not always required to follow the law as mandated in a previous opinion or order in the same case.

An analogous issue is discussed in *Lennig v. New York Life Insurance Co.*, 130 F.2d 580 (3d Cir. 1942). *Lennig* was a diversity case which the Third Circuit Court of Appeals had remanded to the trial court with a mandate requiring action in accordance with the law announced in the body of the decision. Pennsylvania law controlled the substantive rights of the parties. On remand, the trial court decided it was not bound by the mandate because of a subsequent, inconsistent pronouncement on a point of state law in a different case decided by the Pennsylvania Supreme Court. On the second appeal, the Third Circuit stated as follows:

> If, as the learned trial judge apprehended, the later decision in [a state case] interpreted the law of Pennsylvania differently than we had perceived it to be in our earlier opinion [in this case], then the court below was quite right in applying to the retrial of this case the rule if and as made plain subsequently by binding state court decision ... [w]here a federal court of appeals in a given case has ascertained and applied what it apprehends to be the pertinent state law, such ascertainment of the local law is binding upon the trial court at the retrial of the case unless it is clearly made to appear by subsequent statute, no more than declaratory, or by binding state court decision that the law of the state was other than what the federal appellate court had understood it to be.

*Id.* at 581.

Similar conclusions have been reached when a court of last resort is forced to decide whether its own final decision which has become "the law of the case" is binding upon it on a second appeal when in the interim the appellate court has found contrary controlling statutory law which had previously escaped its attention. *See Danforth v. Groton Water Co.*, 178 Mass. 472, 59 N.E. 1033 (1901).

Of course, we are well aware that the issue here is not whether an appellate court is bound to follow the mandate of its previous final decision under the "law of the case" doctrine, nor even whether one appellate court is bound to follow the final decision of another appellate court in the same case. The issue here is whether a lower tribunal is bound by the mandate of a higher court, even when there has been a change in controlling law. The leading case on this issue is *Banco Nacional de Cuba v. Farr*, 383 F.2d 166 (2d Cir. 1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968). In a previous appeal of the

same case, *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), the United States Supreme Court had reversed the Second Circuit Court of Appeals, 307 F.2d 845, and had ruled that the "act of state" doctrine [4] applied to the case and prevented the trial court from examining the validity of an expropriation by the Cuban government. The Supreme Court remanded the case to the district court to decide other litigable issues of fact in proceedings consistent with its opinion and mandate. Before the district court issued a final judgment on the remanded issues, Congress enacted the Hickenlooper Amendment to the Foreign Assistance Act of 1964, 22 U.S.C. § 2370(e). The amended statute provided that "no court in the United States shall decline on the ground of the federal act of state doctrine ... [to determine expropriation cases on the merits] giving effect to the principles of international law ... [where the case involved an asserted confiscation by a foreign country in violation of the principles of international law]." *Id.* The effect of this amendment was to render inapplicable the "act of state" doctrine which the Supreme Court had relied upon to reverse the case. On the second appeal, the Second Circuit was faced with the question of whether the trial court was bound by the mandate of the Supreme Court following the first appeal, or whether it had jurisdiction to disregard the mandate and decide the case under the newly amended statute. The Second Circuit held that the statute governed over the previous mandate. Judge Waterman wrote:

> We have learned of no case involving the effect on the rights of litigants of a federal statute, inconsistent with a Supreme Court mandate, which became law after the Supreme Court had remanded a case to the trial court but before the trial court had acted upon the merits after the remand. None has been called to our attention by the parties and we have

found none by independent research. We must therefore determine whether the mandate rule should cover this novel situation; it is our view that it should not be extended to do so.

> The Supreme Court mandate rule is nothing more than one specific application of a general doctrine appellate courts apply to their orders to lower courts, a doctrine commonly referred to as the law of the case, .... Other courts in applying the law of the case rule have held that a lower court is not bound to follow the mandate of an appellate court if the mandate is, in the interim, affected by an authority superior to the court issuing the mandate, such as by a higher appellate court, either state or federal ... or by an *en banc* decision of the same court .... This principle has also been applied when the mandate of the court is affected by intervening statutory enactment .... The same principle should apply here; any limiting language in the Supreme Court mandate should not preclude judicial application of the [Hickenlooper] Amendment in this case for the rule of law expressed by the mandate has been affected by a subsequently enacted federal statute.

*Banco Nacional de Cuba v. Farr*, 383 F.2d at 178 (citations omitted). *See also Donaldson v. Chase Securities Corp.*, 216 Minn. 269, 13 N.W.2d 1 (1943), *aff'd*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945); *Petty v. Clark*, 113 Utah 205, 192 P.2d 589 (1948).

 The authorities discussed above compel our conclusion that the "law of the case" doctrine is inapplicable where the policy of the law has been changed, by legislative enactment or decision of a higher court, while the case is still pending resolution. In reaching our decision, we do not depart from our long-held rule that after decision on appeal and remand the lower court is bound to follow the law set forth in the appellate court's opinion and to carry out

---

4. The "act of state" doctrine is a federal common law principle applied by federal courts to determine that actions of a foreign sovereign cannot be challenged in private litigation. *Ban-*

*co Nacional de Cuba v. Farr*, 383 F.2d at 174 (quoting S.Rep.No.1188, Part I, 88th Cong., 2d Sess. 24 (1964), U.S.Code Cong. & Admin.News 1964, p. 1148.

the directions contained in the mandate, whether the lower court agrees or disagrees, approves or disapproves of the opinion and the mandate. We hold, however, that this general rule is subject to the exception that the lower court may deviate from the mandate and apply different law from that specified by the appellate court where, while the case is still pending, and in the interim between the rendition and implementation of the mandate, there has been a change in controlling law.[5] Such being the case here, the decision of the court of appeals is vacated and the decree of the trial court is reinstated.[6]

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.

---

**5.** The legislative intent to give retrospective effect to the statute is obvious. We have recently indicated that in a dissolution proceeding the trial court has such jurisdiction as is conferred by the legislature. *Weaver v. Weaver,* 131 Ariz. 586, 643 P.2d 499 (1982) (No. 15748–PR, filed March 9, 1982). We do not reach the questions presented by a less specific statute, nor those inherent in situations where the legislature enacts a law for the purpose of overturning the decision of the appellate court. *Cf. Pennsylvania v. Wheeling and Belmont Bridge Co.,* 54 U.S. (13 Howard) 518, 14 L.Ed. 249 (1852) *with United States v. Klein,* 80 U.S. (13 Wallace) 128, 20 L.Ed. 519 (1871).

**6.** After the first decree, there were some issues raised with regard to spousal maintenance and the setoff awards of community property. The spousal maintenance question was concluded by the decision of the court of appeals on the first appeal. The questions pertaining to the propriety of the setoff of community property seemingly were not again called into issue since the only question raised by either party on the second appeal was the trial court's jurisdiction to deviate from the first appellate mandate. Accordingly, we assume that our decision and the mandate to be issued will conclude all remaining issues in this case.