663 P.2d 591

In re the Marriage of Leonard E. SAMPLE, Petitioner-Appellee,

v.

Alice J. SAMPLE, Respondent-Appellant.

No. 1 CA–CIV 5546.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 24, 1983.

Rehearing Denied April 6, 1983.

Review Denied May 17, 1983.

**600**

Lewis & Roca by Jeremy E. Butler, John P. Frank, Dale A. Danneman, Phoenix, for petitioner-appellee.

Mitchell, Jensen & Timbanard by Robert A. Jensen, Vrenae A. Sutphin, James R. ·Page, Phoenix, for respondent-appellant.

OPINION

FROEB, Presiding Judge.

Alice J. Sample (hereafter referred to as wife) appeals from portions of the judgment and decree of dissolution entered terminating her thirty-four-year marriage to Leonard E. Sample (hereafter referred to as husband). The issues are whether wife was denied her share of corporate stock acquired during the marriage but prior to the parties' move to Arizona, whether the award of spousal maintenance to wife is sufficient, and whether the division of husband's pension fund was proper.

The Samples were married in 1945, residing in Iowa where both parties initially worked. Soon thereafter, wife stopped working and remained at home to devote full time to raising the parties' four children.

In 1961, the Samples moved to Omaha, Nebraska, to allow husband to begin a new job. Part of the inducement to move was the offer of stock options which, in addition to later earned options, resulted in the acquisition of MEI corporation stock, the division of which is at the heart of this appeal.

Another job change resulted in the Samples' move to Phoenix, Arizona, in 1970. Three years later, husband started his own company and made contributions to a company pension fund, the division of which is also contested by wife.

Marriage dissolution proceedings were filed by husband on September 28, 1978. Following a trial, judgment was entered on April 29, 1980, with each spouse sharing equally in the $534,000 of commingled assets. In addition, wife was awarded $1500 per month spousal maintenance until her death or remarriage, 3220 shares of MEI stock as her sole and separate property, and $12,000 for attorney's fees. Husband was awarded the remaining 72,922 shares of the MEI stock, having a value at trial of approximately $920,000, as his sole and separate property. Following the denial of her motion for new trial, wife instituted this appeal.

## DIVISION OF THE MEI STOCK

The provisions of A.R.S. § 25–318 [1] governed the disposition of property at dissolution of the marriage. Among other things, it provided that property acquired by either spouse outside of Arizona would be deemed community property if it would have been community property if acquired in Arizona. Such property has become known as "quasi-community property." In 1979, the Arizona Supreme Court held that the quasi-community property provision was to be applied prospectively only—that it applied only to property acquired by either spouse after 1973. *In re Marriage of Furimsky,* 122 Ariz. 430, 595 P.2d 662 (1979). Property acquired by either spouse before 1973 was to be characterized as separate or community by the law of the state where acquired. *Rau v. Rau,* 6 Ariz.App. 362, 432 P.2d 910 (1967). *See also* discussion of this issue as it relates to military retirement pensions in *Steczo v. Steczo,* 135 Ariz. 199, 659 P.2d 1344 (1983).

The trial court, following these principles, applied the law of Nebraska to the ownership of the MEI stock since it had been acquired before 1973. In doing so it decided that under Nebraska law the greater portion of the stock was the separate property of husband.

Following the trial in this case, the Arizona Legislature amended A.R.S. § 25–318 by adding a provision (set forth in footnote 1) giving the statute retroactive application. Wife filed a "motion to stay entry of formal judgment and/or motion for new trial" seeking to have the amendment applied, but the motion was denied because the amendment had not yet become effective.

Is A.R.S. § 25–318, as amended in 1980, applicable to the MEI stock to give it the status of quasi-community property and, if so, can it be applied to the property in this case for the first time on appeal?

■ We turn to the latter question first and hold that A.R.S. § 25–318, as amended, may be applied on appeal although not in effect during the trial court proceedings. The judgment is not yet final. As we discuss hereafter, the rights in property involved here, while vested, are subject to disposition in accordance with Arizona marriage dissolution laws. Since the proceed-

---

1. A.R.S. § 25–318 in effect at the time of trial read as follows (emphasis added to portion at issue in the present case):

    A. In a proceeding for dissolution of the marriage, or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which previously lacked personal jurisdiction over the absent spouse or previously lacked jurisdiction to dispose of the property, the court shall assign each spouse's sole and separate property to such spouse. It shall also divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct. *For purposes of this section only, property acquired by either spouse outside the state shall be deemed to be community property if said property would have been community property if acquired in this state.* Nothing in this section shall prevent the court from considering excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

    B. The community, joint tenancy and other property held in common for which no provision is made in the decree shall be from the date of the decree held by the parties as tenants in common, each possessed of an undivided one-half interest.

    C. The court may impress a lien upon the separate property of either party or the marital property awarded to either party in order to secure the payment of any interest or equity the other party has in or to such property, or in order to secure the payment of an allowance for child support or spousal maintenance or both. The decree or judgment shall specifically describe by legal description any real property affected and shall specifically describe any other property affected.

In addition to minor word changes to paragraph A, the following paragraph "D" was added to A.R.S. § 25–318 by Laws 1980, Ch. 113, § 3:

    D. The provisions of this section, as added by Laws 1973, Chapter 139, § 2, apply through both prospective and retrospective operation to property without regard to the date of acquisition.

Laws 1980, Ch. 113, included amendments to various other A.R.S. titles and sections, concluding with a § 7 (retroactivity) which read:

    The provisions of § 3 of this act [now paragraph D of A.R.S. § 25–318] are effective retroactively to August 8, 1973.

ings are still open, the law now in effect applies. We reject husband's contention that A.R.S. § 25–318 cannot be applied on appeal. *Jordan v. Jordan,* 132 Ariz. 38, 643 P.2d 1008 (1982). *See also In re Dos Cabezas Power District,* 17 Ariz.App. 414, 498 P.2d 488 (1972).

We come next to the question of whether, under A.R.S. § 25–318, as amended in 1980, the MEI stock must be deemed to be community property. Wife contends it is community property because the 1980 amendment provided that A.R.S. § 25–318 was to be retroactive "without regard to the date of acquisition [of the property]." She contends that the legislative intent in the retroactivity provision was to overcome the *Furimsky* decision and to set forth with certainty that the statute was fully retroactive. Husband counters this, first, by arguing the intent of the 1980 amendment was to make A.R.S. § 25–318 retroactive to 1973 only. For this, he looks beyond the plain language of newly added paragraph D to the words of § 7 in the amending act (see footnote 1). He argues that the § 7 language stating that the amendment is "effective retroactively to August 8, 1973" limits the retroactivity of A.R.S. § 25–318 to August 8, 1973. We reject this interpretation. If it were correct, the 1980 amendment would have accomplished nothing because A.R.S. § 25–318 would have no more retroactivity than the supreme court decision in *Furimsky* said it had. Thus, in determining the legislative intent, we shall assume the amendment was intended to alter the law as declared in *Furimsky.* Moreover, to give the amendment such an interpretation would detract from the clear intent of paragraph D that date of acquisition of the property was to make no difference. To the contrary, a fair reading of the 1980 provision indicates a legislative intent to overcome the holding of *Furimsky* by rendering property acquired prior to 1973 subject to A.R.S. § 25–318 as well as property acquired thereafter.

This conclusion is supported by the decision of the Arizona Supreme Court in *Jordan v. Jordan. Jordan* was a dissolution proceeding in which joint tenancy property was divided by the trial court in accordance with pre-1980 provisions of A.R.S. § 25–318. On appeal, the court of appeals held that this statute operated only prospectively and joint tenancy property acquired before 1973 was not subject to equitable division. The case was remanded. Between the date of the court of appeals' mandate and the proceedings on remand, the legislature enacted the 1980 amendment to A.R.S. § 25–318 earlier discussed. The trial court applied the amendment giving the statute retroactivity contrary to the mandate of the court of appeals. On appeal the second time, the court of appeals reversed again, this time on the basis that the trial court failed to follow the mandate from the first appeal. On further review, the supreme court held that the trial court need not follow a mandate where an intervening change in the law has occurred and reinstated the trial court judgment. The importance of *Jordan* to this case is that it proceeds on the assumption that A.R.S. § 25–318 was made applicable to property acquired before 1973 by virtue of the retroactivity provision of the 1980 amendment. It states, in a footnote, that "[t]he legislative intent to give retrospective effect to the statute is obvious." *See* footnote 5, 132 Ariz. at 44, 643 P.2d at 1014.

We turn next to the constitutional arguments raised by husband concerning the retroactivity of A.R.S. § 25–318. His position is that he is vested with sole ownership of the MEI stock under Nebraska law and that the disturbance of these rights under A.R.S. § 25–318 is an unconstitutional taking of his property without due process.

A constitutional challenge to California's quasi-community property statute (which is substantially similar to that in Arizona) was raised and rejected in *Addison v. Addison,* 62 Cal.2d 558, 43 Cal.Rptr. 97, 399 P.2d 897 (1965). The California Supreme Court found that the operation of the statute did impair vested rights, but that this was justified constitutionally under the police power by reason of the strong interest of the

state in the marital relationship and in marital property upon dissolution. The court quoted from the United States Supreme Court decision in *Williams v. North Carolina,* 317 U.S. 287, 298, 63 S.Ct. 207, 213, 87 L.Ed. 279, 286 (1942) as follows:

> Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of the commanding problems in the field of domestic relations with which the state must deal.

We follow *Addison v. Addison* and uphold the constitutionality of A.R.S. § 25–318.

■ Finally, husband argues that the enactment setting forth the retroactive application of A.R.S. § 25–318 is constitutionally infirm because it includes multiple subjects. The 1980 amendment was included in House Bill 2238 which became Laws 1980, Ch. 113. The title of the act was as follows:

### AN ACT

RELATING TO MARITAL AND DOMESTIC RELATIONS; PROVIDING FOR DEFINITION OF "DOMESTIC VIOLENCE"; PRESCRIBING ARREST PROCEDURE FOR VIOLATIONS; PROVIDING FOR SENTENCING OPTIONS OF COURT IN DOMESTIC VIOLENCE; PROVIDING FOR COURT ORDER TO PREVENT DOMESTIC VIOLENCE; PRESCRIBING PROCEDURE FOR AND CONTENTS OF ORDER; PRESCRIBING PROCEDURE FOR ARREST AND PENALTY FOR VIOLATION OF ORDER; PRESCRIBING CONTENTS OF AND PROCEDURE FOR PRELIMINARY INJUNCTION IN ACTIONS FOR DISSOLUTION OF MARRIAGE; PRESCRIBING PROCEDURES FOR VIOLATION OF INJUNCTION; PRESCRIBING RETROACTIVE EFFECT OF QUASI–COMMUNITY PROPERTY LAW; PROVIDING FOR SUPPORT FOR A MENTALLY OR PHYSICALLY DISABLED CHILD PAST THE AGE OF MAJORITY; PRESCRIBING PROCEDURES FOR PETITION FOR DISSOLUTION OF MARRIAGE; PROVIDING FOR RESTORATION OF FORMER OR MAIDEN NAME; PROVIDING FOR MODIFICATION OF CUSTODY ORDERS; AMENDING TITLE 13, CHAPTER 36, ARIZONA REVISED STATUTES, BY ADDING SECTIONS 13–3601 and 13–3602, AND AMENDING SECTIONS 25–315, 25–318, 25–320, 25–325 AND 25–339, ARIZONA REVISED STATUTES.

Husband contends this is multiple legislation in violation of art. 4, pt. 2, § 13 of the Arizona Constitution which provides that "[e]very Act shall embrace but one subject and matters properly connected therewith...."

■ Liberal construction is to be accorded legislation when challenged under the constitutional provision setting forth the one-subject rule, *State v. Dixon,* 127 Ariz. 554, 622 P.2d 501 (App.1980), and the title to the act may be broad in scope, thereby giving notice of a broad range of legislation. *State v. Sutton,* 115 Ariz. 417, 565 P.2d 1278 (1977). We find that House Bill 2238 reasonably sets forth in its title the legislation to be found in it so that there is no surprise. *State ex rel. Conway v. Versluis,* 58 Ariz. 368, 120 P.2d 410 (1941). The subjects contained under the general heading of domestic relations (although including criminal sanctions) are reasonably related so as not to be in derogation of the one-subject rule. *Litchfield Elementary School District v. Babbitt,* 125 Ariz. 215, 608 P.2d 792 (App.1980), on which husband places reliance to support his position, involved the singularity required in general appropriation bills by art. 4, pt. 2, § 20 of the Arizona Constitution, rather than the general unity of subject matter requirement of § 13. We hold the amendment to A.R.S. § 25–318 found in House Bill 2238 is reasonably related to the general subject matter and does not violate the "one-subject" rule of the Arizona Constitution.

**604**

Since we hold that the MEI stock is to be divided between the parties under A.R.S. § 25–318 as though acquired in Arizona, we do not reach or decide any issue concerning disposition of the stock under Nebraska law. In view of the ruling, we likewise do not reach the issue raised by wife that the amount of spousal maintenance is inadequate, since that issue was raised on the contingency that her claim to one-half of the MEI stock would be denied.

### DIVISION OF PENSION FUND

The trial court found that the parties had a community interest in a corporate pension fund of $10,281. The trial court awarded the pension fund to husband and an offsetting monetary award of $5,140 to wife. On appeal, wife contends the community interest in the pension fund should have included an additional amount of $24,000, justifying an additional award to her of $12,000. We are referred to nothing in the record which would compel a reversal of the trial court's finding and order on this issue and therefore affirm it without further discussion.

In conclusion, the judgment of the trial court is reversed with respect to the finding that 72,922 shares of MEI stock are the sole and separate property of husband. It is ordered that the foregoing shares of stock be treated as community property and be distributed accordingly by the trial court. The case is remanded for entry of a revised judgment consistent with this opinion, together with such further proceedings, findings and orders which the trial court may determine are necessary in order to adjust the rights and obligations of the parties in light of the division of the MEI stock.

GRANT and GREER, JJ., concur.