[Civ. No. 41179. First Dist., Div. Four. July 24, 1978.]

In re the Marriage of HELEN F. and WILLIAM R. ROESCH.
WILLIAM R. ROESCH, Respondent, v.
HELEN F. ROESCH, Appellant.

**COUNSEL**

Stern, Stotter & O'Brien, Lawrence H. Stotter and Victoria J. De Goff for Appellant.

Suren Toomajian, Robert D. McGuiness, Thelen, Marrin, Johnson & Bridges, Max Thelen, Jr., and Valerie L. Westen for Respondent.

OPINION

**CHRISTIAN, J.**—The marriage of Helen F. Roesch and William R. Roesch was dissolved by an interlocutory judgment. Wife appeals from certain portions of the judgment.

The parties were married in Brownsville, Pennsylvania, on April 17, 1947, when both were aged 21; they separated in Pittsburgh, Pennsylvania, on December 28, 1973. The parties have two children, a daughter who is of age, and a minor son, David, born April 2, 1959. Before the birth of the first child in July 1948, wife was briefly employed in an unskilled job. Since that time, however, she has been occupied exclusively as a homemaker.

Except for a brief period early in the marriage, the marital domicile was Pennsylvania, a common law state. When husband left the household he established his residence in California. Wife and the parties' son, David, have remained in Pennsylvania.

During virtually the entire period of the marriage, husband was employed by Jones & Laughlin Steel Corporation in Pittsburgh, Pennsylvania. He began as a coal miner, and gradually rose through the ranks of that corporation until on October 1, 1970, he was elected to the position of president and chief executive officer. His total gross earnings in that position were $163,000 in 1971. On January 1, 1972, husband was elected chairman of the board of directors and president at a base annual salary of $200,000.

In 1973, husband entered negotiations for employment with Kaiser Industries Corporation of Oakland, California. On November 12, 1973, prior to the separation and while he was still employed by Jones & Laughlin Steel Corporation, husband entered into an employment agreement with Kaiser. Under the terms of the agreement, husband was to assume the position of president and chief executive officer commencing January 1, 1974, for a term ending December 31, 1980, with a right of extension to May 31, 1990. The agreement set a base annual salary of $225,000 plus bonuses and other benefits.

Prior to the marriage, husband took out two policies insuring his own life. One of these policies, with a face value of $2,500, was paid up before the parties married. The other, a United States National Service Life Insurance policy with a face value of $10,000, was paid partly with premarital earnings and partly with postmarital earnings.

During the 27-year marriage and prior to the date of separation, four more policies were obtained, insuring husband's life. Wife had been named as a primary beneficiary in each of these policies. On October 10, 1967, husband transferred the policies to Mellon National Bank and Trust Company as trustee. Wife was named as income beneficiary of the insurance trust, with power to invade the principal. Just before the parties separated, husband amended the trust instrument to provide that upon his death the trust assets would pass into his estate to be used for certain estate purposes with the remainder to go to his children. When the parties separated the face value of the insurance trust had risen to approximately $1 million.

Also just before the separation, husband assigned to his daughter a portion of his vested retirement benefits from Jones & Laughlin. The effect of this assignment was to reduce from $20,179 per year to $18,000 per year the benefit husband will receive when the pension matures.

When the parties separated, husband moved his domicile to California; on January 1, 1974, he began performance of his employment agreement with Kaiser. In July 1974, husband commenced the present action for marital dissolution in Alameda County.

There was evidence that during the marriage the parties acquired as tenants by the entireties, as provided by Pennsylvania law, the family home and its furnishings, an automobile, and certain other property.

Other assets acquired by husband during the marriage were, under Pennsylvania law, the separate property of husband. These assets included:

1. Interest in Conoco Exploration Ltd.

2. Interest in Eastgate Shopping Center at Garden City, Kansas.

3. The insurance trust held by Mellon Bank as related above.

4. Pennsylvania funds (liquid assets which, at the time of separation, totaled $275,413.86).

The trial court characterized all of the above assets as quasi-community property, and divided them between the parties as follows:

*To wife:*

1. The family home, valued at $80,000.

2. Household furniture, furnishings, appliances and effects in the family home, valued at $20,000.

3. Securities standing in wife's name alone and having a value of $10,700.

4. A 1971 Ford automobile, valued at $1,400.

The total value of the property awarded to wife was $114,100.

*To husband:*

1. All policies insuring husband's life. The cash surrender value of the policies was established to be $8,187.

2. Union Oil Drilling investment, valued at $3,000.

3. Interest in the Conoco Exploration Ltd., valued at $20,544.

4. Eastgate Shopping Center investment, valued at $19,000.

5. Remainder of the Pennsylvania funds, valued at $36,790.75.

6. Proceeds from the sale of Jones & Laughlin stock, valued at $23,650.

The total value of the property awarded to husband was $111,176.

Husband was also charged with the use of $57,124 from the so-called Pennsylvania funds to maintain the Eastgate Shopping Center investment which was awarded to him.

The inclusion of the above amount brought the total value of the quasi-community property awarded to husband to the amount of $168,300. Wife was also charged with $24,000 because of an increased tax liability of husband which resulted from her refusal to file a joint tax return with husband, as the court had ordered. The total amount charged to wife was therefore $138,100. The trial court found a net disparity in favor of husband in the amount of $30,200, and ordered that the disparity

be equalized by either the payment of $30,200 from the joint stock account of the parties or shares of stock of a like value as of September 2, 1976, at the option of wife. The parties' joint stock account was to be used to pay attorney's fees with any residue from the account to be equally divided between the parties.

The trial court found that the unassigned portion of husband's retirement benefits from Jones & Laughlin constituted a quasi-community asset which should be divided equally between the parties when received by husband. All of the benefits which husband has or will receive under his employment agreement with Kaiser were held to constitute the fruits of his postseparation efforts, and were therefore confirmed to him as his separate property.

At trial husband stipulated, and the trial court found, that husband had the ability to pay any amount reasonably necessary for the support and maintenance of wife and the parties' minor son. Spousal support in the amount of $2,500 per month was ordered, together with $500 per month for child support; husband's obligation to pay child support was made contingent upon noninterference with his reserved visitation rights by either wife or David.

## I.

Wife contends that the trial court's award of spousal support in the amount of $2,500 per month is so inadequate as to constitute an abuse of discretion. That contention cannot be sustained.

■ In setting the amount of spousal support, a wide discretion is vested in the trial court (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41]), "and thus an appellate court must act with cautious judicial restraint, even though the particular award might appear on appeal to be modest or generous under the particular circumstances." (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].) A trial court has abused its discretion when, after calm and careful review of the entire record, it can fairly be said that no judge would reasonably make the same order under the same circumstances. (*In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 114; *In re Marriage of Norton* (1976) 71 Cal.App.3d 537, 541 [139 Cal.Rptr. 728].)

Wife received the family home clear of encumbrances. In a pendente lite order, dated October 24, 1975, wife had been awarded $1,650 spousal

support and $750 per month child support, for a total of $2,400 per month. Between November 1974 and November 1975, wife had accumulated from these payments savings of approximately $665 per month, for a total of $8,000. The trial court might reasonably infer that appellant experienced no difficulty in living on support payments amounting to less than that which she was awarded in the final judgment.

Wife nevertheless contends that the award is inadequate in view of particular circumstances of the case. She urges that the trial court ignored several crucial factors: husband's ability to pay; the duration of the marriage; the unlikelihood of employment for wife in view of her age, experience and education; the disparity of the award of income-producing assets favoring husband; the comparative financial positions of the parties before and after dissolution. But wife requested that she be awarded the high value, nonincome-producing assets and there was evidence that her monthly expenses did not exceed $2,500 per month; thus, we find no abuse of discretion in the trial court's award.

## II.

 Wife contends that the trial court erred when it conditioned husband's obligation to pay child support upon his "being allowed to exercise visitation rights without interference" from wife or the minor child. This contention is sound. The law imposes upon parents an obligation of child support. (Civ. Code, §§ 242, 4700.) "This obligation continues notwithstanding the parents' lack of custody [citation] . . . . The extent of the parental support obligation is left to the sound discretion of the court [citations] and the trial court's order will not be disturbed on appeal unless that discretion is abused. [Citation.]" (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941].) There has been some divergence among the California decisions with respect to the effect on support obligations of the custodial parent's disobedience to a visitation order. Several courts have held that a mother is estopped to enforce child support payments where she has displayed an intent to frustrate the father's visitation rights. (*Szamocki* v. *Szamocki* (1975) 47 Cal.App.3d 812, 818-820 [121 Cal.Rptr. 231]; see *Spurrell* v. *Spurrell* (1962) 205 Cal.App.2d 786, 789 [23 Cal.Rptr. 414] [action by mother to enforce child support obligation of father under Washington State decree providing for reduction of child support payments upon denial of visitation rights].) However, other courts have disapproved expungement of the child support obligation to punish a recalcitrant custodial parent. "[W]e do not regard an order depriving the children of

support for an alleged fault of the mother (especially when such fault is unproven) as a proper exercise of the court's discretion . . . ." (*Ernst* v. *Ernst* (1963) 214 Cal.App.2d 174, 179 [29 Cal.Rptr. 478]; see *Clarke* v. *Clarke* (1970) 4 Cal.App.3d 583, 589 [84 Cal.Rptr. 393]; *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 465 [137 Cal.Rptr. 348].) The case of *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 294 [132 Cal.Rptr. 261], takes a middle ground. In that case, the Court of Appeal summarized the prevailing law as follows: "Confronted with such a situation, a trial court should be concerned with the child's welfare as the paramount consideration. The court should bear in mind that preservation of parental relationships is in the best interest of the child as well as the parent. . . . [¶] [A] mother's sabotage of the father's visitation right furnishes no ground for withholding child support payments. It does provide a ground for a motion to modify the decree which the court should consider as part of the array of circumstances affecting custody and support."

The order here under attack has one specially troublesome effect: it invites husband, when aggrieved in relation to visitation, to withhold support payments instead of obtaining a neutral determination of the merits of the grievance. Moreover, it seems to us that when once the court has determined what child support is necessary and what visitation will be beneficial, all provisions of the decree should be enforced; it benefits none of the parties to recognize (tacitly in regard to visitation and expressly as to support) selective disregard of portions of what should be a coordinated judicial determination of rights and responsibilities. We conclude that it was an abuse of discretion to make husband's obligation to pay child support dependent upon lack of interference with husband's right of visitation.

### III.

Wife contends that the court acted contrary to the evidence when it determined that benefits flowing from husband's contract with Kaiser Industries were his separate property. Husband commenced negotiations with Kaiser Industries as early as March 1973. The employment contract was signed November 12, 1973. Paragraph 12 of the agreement provided as follows:

"TWELVE. If the employment of Mr. Roesch with Kaiser shall be terminated for any reason by Kaiser during the term of this Agreement, or at the election of Mr. Roesch pursuant to paragraph ONE hereof, or if

Mr. Roesch's employment shall terminate on December 31, 1980 under the terms hereof, Mr. Roesch shall be entitled, in addition to any other rights to which he may be entitled under this Agreement, to receive a special pension from Kaiser in the amount of $75,000 per year, payable in substantially equal monthly installments, from the date of such termination until the death of Mr. Roesch; provided, however, that the amount of such special pension shall be increased by an amount determined by multiplying $3,000 by the number of full years of service to Kaiser performed by Mr. Roesch and shall be reduced by the amount of any benefits payable to Mr. Roesch under Kaiser's Retirement Plan in effect at the time of such termination and by the amounts of any benefits paid to Mr. Roesch under any other industrial private pension plan. In the event of Mr. Roesch's permanent disability, payments under this paragraph shall be made, subject to the conditions thereof, following the expiration of the seven year period provided in paragraph NINE."

A spouse's retirement rights, whether or not vested, represent a property interest, and to the extent such rights derive from employment during marriage, they comprise a community asset subject to division in dissolution proceedings. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 844-847 [126 Cal.Rptr. 633, 544 P.2d 561]; see also *In re Marriage of Skaden* (1977) 19 Cal.3d 679, 682 [139 Cal.Rptr. 615, 566 P.2d 249].) Wife points out that husband's employment contract with Kaiser Industries was executed prior to separation; it is argued that the pension benefits provided for in the contract were derived from employment during marriage notwithstanding the fact that respondent did not commence work until after the parties' separation.

Retirement benefits are not gratuities deriving from the beneficence of the employer, but are deferred consideration for past services rendered by the employee. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 845; *In re Marriage of Jones* (1975) 13 Cal.3d 457, 461 [119 Cal.Rptr. 108, 531 P.2d 420].) An employee begins to earn pension benefits when he begins performance of his job. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 845.)

Husband did not commence performance of his employment contract with Kaiser until January 1, 1974, three days after the parties' separation. If he had entirely breached his side of the bargain by failing to appear and assume his duties, Kaiser would have been relieved of the duty to perform its side of the bargain. (Rest. Contracts, § 274.) Husband did not acquire a property right to Kaiser retirement benefits during marriage.

## IV.

Wife contends that the trial court's division of certain assets which it characterized as quasi-community property was improper. Specifically, she challenges the propriety of the trial court's order with respect to retirement benefits from Jones & Laughlin, certain insurance policies on respondent's life acquired by the parties during marriage, and certain income-producing assets.

In the absence of a statute to the contrary, personal property acquired by a spouse during marriage while domiciled in a common law state does not lose its character as the separate property of the acquiring spouse upon a change of domicile to a community property state. (*Addison* v. *Addison* (1965) 62 Cal.2d 558, 563 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]; see Annot. 14 A.L.R.3d 404, 411-416.) Furthermore, the rule of tracing is invoked so that all property later acquired in exchange for the common law separate property is likewise deemed separate property. (*Id.*)

The Legislature has twice attempted to alter the "domicile of acquisition" principle. A former statutory provision (Civ. Code, § 164 as amended in 1917 [now Civ. Code, § 5110]) attempted to treat as community property all personal property acquired during marriage by either husband or wife, or both, while domiciled elsewhere, which property would have been community property if acquired while domiciled in this state. In *Estate of Thornton* (1934) 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343], this provision was held ineffective, on the basis that changes in the community property system which would impair "vested interests" could not constitutionally be applied retrospectively.

The constitutional foundation of *Thornton, supra,* has arguably been undermined by subsequent decisions holding that vested property rights can be diminished by retrospective application of changes in marital property law if such application is demanded by a sufficiently important state interest. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Addison* v. *Addison, supra,* 62 Cal.2d 558, 567-569; see generally *Boyd* v. *Oser* (1944) 23 Cal.2d 613, 623 [145 P.2d 312].) Thus, in *Addison* v. *Addison, supra,* 62 Cal.2d 558, the court held that a 1961 enactment[1] expanding the definition of community property

---

[1] "As used in this part, 'quasi-community property' means all real or personal property, wherever situated, heretofore or hereafter acquired in any of the following ways:

"(a) By either spouse while domiciled elsewhere which would have been community

could constitutionally be applied in cases meeting two prerequisite conditions: (1) both parties have changed their domicile to California, and (2) subsequent to the change of domicile the spouses sought in a California court legal alteration of their marital status. Unless both of these conditions exist, the interest of the State of California in the status of the property of the spouses is insufficient to justify reclassification without violating the due process clause of the Fourteenth Amendment and the privileges and immunities clause of article IV, section 2, of the federal Constitution. Additionally, reclassification based upon a mere change of domicile would abridge the privileges and immunities clause of the Fourteenth Amendment.

■ In the present case the parties lived in Pennsylvania for virtually their entire married life. *After* their separation, husband transferred his domicile to California; wife and the parties' minor son remained in Pennsylvania. Under these facts, the interest of California in the marital property of the parties is minimal, while that of Pennsylvania is substantial. Moreover, as a domiciliary of Pennsylvania, wife is entitled to the protection of the laws of that state. Application of California's quasi-community property statute was therefore improper. While no modification of the judgment is called for in the absence of an appeal by husband, wife cannot be heard to complain that the apportionment to her was insufficient, from assets which under governing Pennsylvania law were not subject to apportionment at all.

## V.

Wife contends that the trial court erred in failing to charge husband for $45,000 which he paid wife for spousal and child support obligations from January 1, 1975, to the date of trial. Husband concedes that these sums were paid out of the Pennsylvania funds, rather than his post-separation earnings.

Civil Code section 4805, as in effect until January 1, 1975, provided:

"In the enforcement of any decree, judgment or order rendered pursuant to the provisions of this part, the court must resort:

property if the spouse who acquired the property had been domiciled in this state at the time of its acquisition.

"(b) In exchange for real or personal property, wherever situated, which would have been community property if the spouse who acquired the property so exchanged had been domiciled in this state at the time of its acquisition." (Civ. Code, § 4803, based on former Civ. Code, § 140.5 added by Stats. 1961.)

"(a) To the community property; then,

"(b) To the quasi-community property; then,

"(c) To the separate property of the party required to make such payments."

Effective January 1, 1975, section 4805 was amended as follows:

"In the enforcement of any decree, judgment or order of support rendered pursuant to the provisions of this part, the court shall resort:

"(a) To the earnings, income, or accumulations of either spouse, while living separate and apart from the other spouse, which would have been community property if the spouse had not been living separate and apart from the other spouse; then,

"(b) To the community property; then,

"(c) To the quasi-community property; then,

"(d) To the other separate property of the party required to make such payments."

█ Under this statute, all payments made by the husband pursuant to a pendente lite spousal and child support order after January 1, 1975, were chargeable first to his separate earnings, income or accumulations. (*In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 933 [134 Cal.Rptr. 161].) Relying upon *Tammen*, wife contends that the $45,000 in support payments should have been charged against husband's post-separation earnings rather than against assets declared by the court to constitute quasi-community property.

This contention would have had merit if the Pennsylvania assets used by husband for payment of support had been subject to treatment as quasi-community property. But as we have seen, such treatment would not be constitutionally permissible. Therefore, the court acted correctly when it declined to charge husband for using Pennsylvania assets to pay support.

## VI.

Wife contends that the findings of fact and conclusions of law rendered by the trial court were insufficient for effective appellate review. This

contention is contrary to the well-established rule that the findings of fact should be confined to ultimate material issues in the case, and that "all else is surplusage." (*Denbo* v. *Senness* (1953) 120 Cal.App.2d 863, 869 [262 P.2d 31]; *Freeman* v. *Jergins* (1954) 125 Cal.App.2d 536, 563 [271 P.2d 210].)

Findings of fact, filed after trial, should state ultimate facts, not evidentiary facts (*Miller* v. *Gusta* (1929) 103 Cal.App. 32, 37 [283 P. 946]); the evidence from which an ultimate fact is determined need not and should not be found by the trial court. (*Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 129 [264 P.2d 626], overruled on another point, *See* v. *See* (1966) 64 Cal.2d 778, 786 [51 Cal.Rptr. 888, 415 P.2d 776].) ██ Wife complains that she was denied findings on the following evidentiary points: (1) the history of the negotiations between husband and Kaiser; (2) the history of husband's employment with Jones & Laughlin; (3) the terms of husband's employment contract with Kaiser; (4) the terms of husband's termination agreement with Jones & Laughlin; (5) the amount of husband's remuneration from Kaiser Industries; and (6) facts concerning the establishment of the husband's insurance trust with Mellon Bank. Each of these requests relates to evidentiary details and the trial court's refusal to include them in the findings was proper. (*Kanner* v. *Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 566-567 [78 Cal.Rptr. 25].)

The judgment is modified to delete the provision making husband's obligation to pay child support conditional. As so modified the judgment is affirmed. Wife will recover costs on appeal. The trial court will hear and determine any application by wife for counsel fees.

Rattigan, Acting P. J., and Paik, J.,* concurred.

A petition for a rehearing was denied August 17, 1978, and appellant's petition for a hearing by the Supreme Court was denied September 27, 1978. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.