752 P.2d 1026

**In re the Marriage of Mary Maxine MARTIN, Petitioner–Appellee,**

v.

**Richard George MARTIN, Respondent–Appellant,**

**Union Oil Company of California, Additional Defendant.**

**No. 1 CA–CIV 7959.**

Court of Appeals of Arizona, Division 1, Department D.

July 15, 1986.

Lewis and Roca by Jeremy E. Butler, Joseph S. Jackson, Paul G. Ulrich, Phoenix, for respondent-appellant.

Favour, DePasquale, Moore & Schuyler, P.A. by Janis Ann Sterling, Prescott, for petitioner-appellee.

## OPINION

BROOKS, Judge.

This is an appeal from a decree of dissolution distributing various marital assets between husband, a California resident, and wife, a resident of Arizona. The relevant facts are as follows.

Richard Martin (husband) and Mary Martin (wife) were married in Wyoming in 1950. Due to the nature of husband's work, the parties travelled extensively throughout the United States and the world. In August, 1979, the parties returned to the United States from Singapore, where husband had worked for Union Oil Company of California. The parties became domiciled in California, where husband's job was located. Shortly thereafter, they bought a townhouse in Prescott, Arizona as a planned retirement home. Wife moved into the Prescott townhouse in December, 1979, taking with her a substantial portion of the furnishings from the couple's California home. Husband remained in California, intending to join his wife in Prescott upon his planned retirement. During the period they remained separated, husband gave wife money for living expenses and payments on the townhouse mortgage. Things did not bode well for the marriage, however, and wife filed this action seeking dissolution of the marriage in 1982.

During the parties' three year separation prior to the action for dissolution, husband lived in California and worked for Union Oil Company. He maintained almost total control over the parties' extensive marital assets, sending only a fixed and relatively small monthly sum to his wife in Arizona. At no time has husband ever resided in Arizona.

At the conclusion of the evidence, the trial court found that certain shares of Gulf Oil stock and a partial interest in a trust known as the Dry Lake Farm trust, which husband claimed as his separate property, were in fact community property. The trial court also ruled that, under Arizona law, husband's post separation earnings in California were community property. After dividing the community assets and liabilities between the parties, the court awarded wife a money judgment in the amount of $46,688 "representing [her] share of the net community income" for the three years the parties were separated. The court also awarded a second money judgment in the amount of $9,473 to wife which represented funds in several joint savings accounts that husband depleted in order to make court-ordered spousal maintenance and attorney's fees payments to wife. Wife was also awarded $2,000 a month in spousal maintenance.

Husband now appeals alleging that the trial court made numerous errors in dividing the property between the parties and in awarding spousal maintenance to wife. We will address each of these allegations separately.

### I.

Husband first contends that the trial court erred in finding that 100 shares of Gulf Oil stock and a $\frac{2}{15}$ths interest in the Dry Lake Farm trust were community property. We disagree.

The record shows that husband received an initial one-fifth interest in the Dry Lake Farm trust as a gift in 1962. Wife properly concedes that this one-fifth interest is

husband's separate property. Husband contends that he bought the 100 shares of Gulf Oil stock and the additional ²⁄₁₅ths interest in the Dry Lake Farm trust with separate funds which he received as income from this initial one-fifth interest in the Dry Lake Farm trust. He argues, therefore, that the trial court erred in not finding that both the Gulf Oil stock and the ²⁄₁₅ths interest in the Dry Lake Farm trust were his separate property.

 Two hurdles confront husband's claim that the Gulf Oil stock and the ²⁄₁₅ths interest in the Dry Lake Farm trust are his separate property. The first is that both assets were acquired during the marriage and are therefore presumed to be community property. *Bender v. Bender*, 123 Ariz. 90, 597 P.2d 993 (App.1979); *Matter of Estate of Messer*, 118 Ariz. 291, 576 P.2d 150 (App.1978). Husband therefore has the burden of proving by clear, satisfactory, and convincing evidence that these assets were purchased with his separate funds. *Bourne v. Lord*, 19 Ariz.App. 228, 506 P.2d 268 (App.1973). Secondly, in carrying this burden, husband is hindered by the fact that while the parties were residents of New Mexico, the income from husband's initial separate property interest in the Dry Lake Farm trust was deposited into a New Mexico joint bank account along with his regular salary, which was clearly community property. It was allegedly with these comingled funds that husband purchased the Gulf Oil stock and the additional ²⁄₁₅ths interest in the Dry Lake Farm trust. The law in Arizona is clear that where separate and community funds are so comingled that they become indistinguishable, they are presumed to be community property. *Blaine v. Blaine*, 63 Ariz. 100, 159 P.2d 786 (1945); *Flowers v. Flowers*, 118 Ariz. 577, 578 P.2d 1006 (App. 1978); *Ivancovich v. Ivancovich*, 24 Ariz. App. 592, 540 P.2d 718 (App.1975). The burden is then upon the party claiming a separate property interest in the funds to prove it, together with the amount, by clear and satisfactory evidence. *Cooper v. Cooper*, 130 Ariz. 257, 635 P.2d 850 (1981).

 We find that husband has failed in his burden of proof. While he claims that he sufficiently traced the source of the funds used to purchase both the Gulf Oil stock and the additional interest in the Dry Lake Farm trust to his separate funds, our review of the record reveals quite the opposite. Husband's testimony at trial as to the source of the funds used to acquire these two assets was uncertain at best. Moreover, he was unable to produce any convincing documentation or records showing that the funds used to purchase these assets were traceable to his separate funds. We therefore affirm the trial court's ruling that both the 100 shares of Gulf Oil stock and the additional ²⁄₁₅ths interest in the Dry Lake Farm trust were community property.

## II.

Husband next contends that the trial court erred by applying Arizona rather than California law to the issue of whether his post-separation earnings were separate or community property. Under A.R.S. §§ 25–211 and 25–213, post-separation earnings are community property in Arizona until a final decree of dissolution is entered. *Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980); *Matter of Estate of Messer*, 118 Ariz. 291, 576 P.2d 150 (App.1978). Under California law, however, such earnings are considered the separate property of the spouse who acquires them. Cal.Civ. Code § 5118 (West 1983). We are thus confronted with a conflict of law question.

Husband contends that where parties are domiciled in different states when marital property is acquired, the law of the state where the acquiring spouse is domiciled at the time applies to determine the property's disposition upon dissolution. *Restatement (Second) of Conflict of Laws*, § 258, comment c (1971). He claims that since wife was domiciled in Arizona and he was domiciled in California when the post-separation earnings were acquired, California law should be applied to characterize these earnings as his separate property.

While husband agrees that Arizona's quasi-community property law, A.R.S.

§ 25–318(A)[1], would normally supersede the *Restatement's* choice of law rule and convert his earnings into community property, *Woodward v. Woodward,* 117 Ariz. 148, 571 P.2d 294 (App.1977), he argues that Arizona law should not apply where only one of the parties is domiciled in this state. In support of this argument, he relies on *In re Marriage of Roesch,* 83 Cal.App.3d 96, 147 Cal.Rptr. 586 (App. 1978). In *Roesch,* the California Court of Appeals refused to apply California's quasi-community property law to a situation where only one of the parties was domiciled in that state. The court held that California law was applicable only where *both* spouses are domiciled in California. *Roesch,* 83 Cal.App.3d at 107, 147 Cal.Rptr. at 593.

Husband contends that since California's quasi-community property law is so similar to our own,[2] *see Sample v. Sample,* 135 Ariz. 599, 602, 663 P.2d 591, 594 (App. 1983), we should, by analogy, adopt California's view. Wife counters by arguing that this issue has already been decided against husband in *Woodward v. Woodward, supra.*

We begin our analysis by noting that Arizona has not decided the issue of whether our quasi-community property law supersedes the usual choice of law rule stated in comment c to the *Restatement (Second) of Conflict of Laws* § 258 in cases such as the one at hand. Contrary to wife's claim, *Woodward* did not decide the issue. *Woodward* held only that *where* § 25–318(A) applies, it *necessarily* supersedes the *Restatement's* choice of law rule. However, the issue of whether the statute applies where only one spouse is domiciled in Arizona was not addressed. The issue is thus one of first impression in this jurisdiction.

We are not persuaded that we should follow California's lead on this issue. It seems clear from our reading of *Roesch* that the court's refusal in that case to apply California's quasi-community property law to cases where only one spouse is domiciled there rests upon a misinterpretation of past California case law. The *Roesch* court refused to invoke California law where only one spouse was domiciled in that state because it was confronted with what it perceived to be constitutional limitations imposed in *Addison v. Addison,* 43 Cal.Rptr. 97, 399 P.2d 897 (1965). In *Addison,* the California Supreme Court addressed a constitutional challenge to California's quasi-community property statute. In upholding the statute's constitutionality, the *Addison* court simply interpreted the statute to mean that the concept of quasi-community property did not apply until a divorce action was filed in the California courts after *both* parties became domiciled there. *Id.* at 102, 399 P.2d at 902. The court then held that since something more than merely moving into California was required for the statute to apply—namely, that a divorce action be filed in the state court—the statute did not violate the federal privileges and immunities clause by disturbing the vested rights of other state's citizens. The court went on to hold that the statute did not violate federal due process because California had a compelling interest in the marital relationship and disposition of the marital property upon divorce. The California Court of Appeals in *Roesch,* however, broadly interpreted *Addison* as creating two *constitutional* prerequisites to the application of California's quasi-community property statute: 1) that *both* spouses be domiciled in California, and 2) that they seek a dissolution there. In refusing to invoke California's quasi-

1. A.R.S. § 25–318(A) states in pertinent part:
 In a proceeding for dissolution of the marriage.... property acquired by either spouse outside this state shall be deemed to be community property if the property would have been community property if acquired in this state.

2. California's quasi-community property law is embodied in Cal.Civ.Code § 4803 (West 1970), which reads:

 As used in this part, "quasi-community property" means all real or personal property, wherever situated, heretofore or hereafter acquired in any of the following ways:
 (a) By either spouse while domiciled elsewhere which would have been community property if the spouse who acquired the property had been domiciled in this state at the time of its acquisition.

community property statute, the *Roesch* court declared:

> Unless both of these conditions exist, the interest of the State of California in the status of the property of the spouses is insufficient to justify reclassification [by application of the quasi-community property statute] without violating the due process clause of the Fourteenth Amendment and the privileges and immunities clause ... of the federal Constitution.

83 Cal.App.3d at 107, 147 Cal.Rptr. at 593.

We do not find *Roesch* to be a proper interpretation of *Addison* and we decline to follow it. *Addison* did not seek to place constitutional restraints on the exercise of California's quasi-community property statute; rather, it only gave a statutory interpretation of what the court thought the statute *itself* required before the quasi-community property concept could be invoked. The court simply held that this interpretation of the statute's meaning would unquestionably pass constitutional muster. Nowhere did the court imply that the statute would be unconstitutional unless given such an interpretation. The court did not even address the issue of whether other interpretations of the statute were constitutionally permissible. To say, therefore, as *Roesch* does, that *Addison* created a two-pronged test for the constitutionality of applying the concept of quasi-community property misconstrues *Addision* and inflates its holding.

■ Moreover, while we note that the language of California's quasi-community property statute is very similar to our own, we decline to interpret our statute, as was done in *Addison*, to require both spouses to be domiciled here before the statute may be invoked. Indeed, no rationale was given by the *Addison* court as to why it interpreted California's statute in such a restrictive manner. It does not appear that the *Addison* court felt such an interpretation was necessary to uphold the statute's constitutionality since the court itself cast doubt upon the validity of the petitioner's constitutional challenge from the beginning. Such an interpretation is at odds with the broad language of both statutes.

For instance, Arizona's statute, A.R.S. § 25–318(A), provides that "property acquired by *either* spouse outside of this state" is subject to being treated as quasi-community property. This broad language clearly encompasses the facts of the instant case.

■ Furthermore, apart from the lack of any rationale in *Addison* for restricting the application of A.R.S. § 25–318(A), we find that factors such as uniformity of result and judicial economy favor application of our quasi-community property law to all dissolution actions filed in this state. The alternative would be to apply the traditional *Restatement* choice of law rule to cases such as this. However, the *Restatement* rule has been criticized as "anachronistic" and "unworkable in modern mobile America." *Ismail v. Ismail*, 702 S.W.2d 216, 222 (Tex.App.1985); Sampson, *Interstate Spouses, Interstate Property, and Divorce*, 13 Tex.Tech.L.Rev. 1285, 1344 (1982). Under the *Restatement*, a court may find itself with the task of applying various rules of disposition to different marital assets depending upon where each spouse was domiciled when the particular asset was acquired. For example, in the instant case, it is conceivable that husband could have been transferred to other states or countries—as he so often was in the past—after the parties separated. His post-separation earnings and any property acquired with them would thus be subject not only to California law (to the extent they were earned while he resided in California), but also to the law of the other jurisdictions. The problems that would confront a trial court in reaching a proper and equitable disposition of the marital estate in such a case can be readily appreciated. We believe that the trial court's task is sufficiently complicated without adding unnecessary burdens. From a choice of law standpoint, we therefore find that application of Arizona's quasi-community property law is the better approach in cases such as this. We hold, therefore, that A.R.S. § 25–318(A) applies to this case and, under *Woodward, supra,* supersedes the usual choice of law rule stated in comment c to

§ 258 of the *Restatement (Second) of Conflict of Laws.*

Without offering any particular legal analysis, husband next argues that such a blanket application of A.R.S. § 25–318(A) may well give rise to constitutional problems. However, we believe that any question concerning the constitutionality of applying Arizona's quasi-community property law to a spouse who has never been domiciled here is subsumed by the issue of whether Arizona may acquire personal jurisdiction over such spouse.

■ The rule is well established that where Arizona has personal jurisdiction over both parties to a dissolution proceeding, it may apply its substantive law in dividing the marital property between the parties—even if that property is located in another state. *Auman v. Auman,* 134 Ariz. 40, 653 P.2d 688 (1982); *Bowart v. Bowart,* 128 Ariz. 331, 625 P.2d 920 (App. 1980). Whether Arizona courts may constitutionally exercise such personal jurisdiction over a non-resident spouse depends upon whether the spouse has sufficient minimum contacts with the state to justify being haled before an Arizona court. *Schilz v. Superior Court,* 144 Ariz. 65, 695 P.2d 1103 (1985); *Meyers v. Hamilton Corp.,* 143 Ariz. 249, 693 P.2d 904 (1984); *Rodriquez v. Rodriquez,* 8 Ariz.App. 5, 442 P.2d 169 (1968). In the case at hand, however, we need not address whether husband's contacts with Arizona were sufficient to properly subject him to personal jurisdiction in an Arizona court since he voluntarily submitted himself to such jurisdiction. As husband has consented to the

Arizona court's jurisdiction, he cannot now claim that he is being treated unfairly by having Arizona's substantive law applied to the facts of this case. We find, therefore, that there is no constitutional infirmity in applying Arizona's quasi-community property law to the husband in this case. Consequently, we affirm the trial court's application of Arizona law to the issue of whether husband's post-separation earnings were community or separate property. Under Arizona law, they are clearly community property subject to division upon dissolution.

### III.

■ Husband next contends that the trial court lacked the authority to award wife a $46,688 money judgment wholly apart and distinct from any division of the existing community assets and liabilities. We agree.

It is apparent from the language of the decree of dissolution that the $46,688 judgment awarded to wife represents neither community assets nor liabilities existing at the time of dissolution, but rather a share of the "net community income" for the three years the parties remained apart.[3] The trial court's objective in making such an award was clearly to equalize the property which each party had available during the years of their separation. In order to do so, the trial court included the "net community income" from the years in question in the total value of the marital estate and then awarded each party one-half of this income as part of the overall property division, placing wife's share in the form of a judgment against husband.[4] The prob-

---

**3.** The actual language of the decree reads:
RICHARD G. MARTIN is ordered to pay to MARY M. MARTIN the sum of Forty–Six Thousand Six Hundred Eighty–Eight ($46,-688.00) Dollars upon entry of the Decree, together with interest at the rate of ten percent (10%) per annum from January 5, 1984 until such sum is paid, representing MARY M. MARTIN'S share of the net community income for 1980, 1981, and 1982.

**4.** This is obvious from the court's minute entry of January 5, 1984, where the court awarded each party, as part of the division of the marital assets, one-half of the "1980, 1981 and 1982 Net Income," each half being valued at $46,688.

How the court reached the award of $46,688 is also clear from the record. The court simply calculated, from what evidence was available, the parties' total income from all sources during 1980, 1981, and 1982. This came to $256,882. From this amount, the court deducted $125,374 for what it apparently determined to be legitimate expenses, leaving a balance of $131,508. From this amount, the court subtracted another $38,131 representing funds paid to the Republic of Singapore in taxes. This left a balance of $93,377, which the court divided equally between the parties, giving each $46,688.

lem with such an award is that it divides property between the parties which did not belong to the marital estate at dissolution. This exceeds the authority granted to the trial court under § 25–318(A), which directs the trial court to equitably *divide* the property in the community estate between the parties. As § 25–318(A) couches the trial court's authority to dispose of property upon dissolution in terms of dividing it between the parties, it is a necessary prerequisite to the exercise of that authority that the property to be divided actually exists. It is apparent, therefore, that under § 25–318(A), the trial court has the authority to divide between the parties only those community assets and liabilities *existing at the time of dissolution. See, e.g., Blaine v. Blaine,* 63 Ariz. 100, 113–14, 159 P.2d 786, 792 (1945) (where the parties' accounts receivables owned during the marriage would have been spent prior to dissolution, and their value could not be represented by the parties' cash assets at dissolution, the trial court could not consider them in valuing the community estate nor award wife a credit for them); *Speer v. Speer,* 209 Cal.App.2d 233, 25 Cal.Rptr. 729, 733 (1963) ("[I]n dividing property incidental to the granting of a divorce decree, the court is limited by the amount of property in its hands for division"); *Jesperson v. Jesperson,* 610 P.2d 326, 328 (Utah, 1980) ("By the very nature of a property division, the marital estate is evaluated according to what property exists at the time the marriage is terminated.")

Because the trial court's authority is limited solely to dividing existing community assets and liabilities, it clearly lacks the ability to award property between the parties in excess of that which exists before it for division. This, however, is precisely what the trial court did in the instant case through a retrospective accounting of the parties' income and expenses over the three years that they were separated.[5] The trial court included the "net community income"

in evaluating the community assets available for division and awarded wife a judgment against husband representing one-half of this income. No hard evidence was presented, however, which established that any part of this income was still in existence at the time of dissolution and the trial court made no finding to this effect. To the contrary, husband testified that all of the income not "accounted for" at trial had been spent

■ Wife counters by alleging that husband either improperly spent or concealed the hypothesized "net community income" and that the trial court was therefore within its discretion when it awarded wife a judgment for $46,688 to compensate her for her share of this income. We find this argument to be unpersuasive. First, the language of the decree does not characterize the award as compensation to wife for existing funds. Moreover, even if we were to agree that husband improperly squandered community assets, such a finding would still not justify the trial court's award. Section 25–318(A) only authorizes consideration of excessive or abnormal expenditures in connection with reaching an equitable *division* of community property. It does not authorize imposition of a money judgment against the allegedly guilty spouse wholly distinct from the division of the existing community assets and liabilities. Under § 25–318(A), where the court finds improper expenditures or concealment, it may disproportionately divide the community property *before it* in order to compensate the injured spouse for the other's wrongdoing. *See Kosidlo v. Kosidlo,* 125 Ariz. 32, 607 P.2d 15 (App.1979); *Neely v. Neely,* 115 Ariz. 47, 563 P.2d 302 (App. 1977). It may not, however, award a separate money judgment to the injured party against the mischievous spouse apart from any division of community assets and liabilities. Such a result is not contemplated by the statute and would thus be an abuse of discretion since the trial court only has

---

5. Even if we were to agree that the court had the authority to conduct such an accounting, we would still find the trial court's result flawed. The expenses that the court gave husband credit for were arbitrarily limited and would not represent the actual expenses of the parties. The court did not permit any allowance whatsoever for social security taxes, property taxes, retirement contributions, insurance, or a variety of other legitimate expenses.

such jurisdiction in a dissolution proceeding as the statute grants to it. *Weaver v. Weaver*, 131 Ariz. 586, 643 P.2d 499 (1982).

The dissent relies on case law from several non-community property states in arguing for a broader application of § 25–318(A). However, we find these decisions to be unpersuasive for a number of reasons.

First, of the cases cited by the dissent, only the decision in *A.I.D. v. P.M.D.*, 408 A.2d 940 (Del.Supr.1979), gives direct support to its position. However, we note that even the Delaware courts recognize that the holding in that case is an exception to the general rule that a court has only the authority to divide *existing* assets. *See Frank G.W. v. Carol M.W.*, 457 A.2d 715 (Del.Supr.1983).

*Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985), and *Daniels v. Daniels*, 557 S.W.2d 702 (Mo.App.1977), both cited by the dissent, are clearly distinguishable. *Rosenberg* involved a Maryland statute that *expressly* authorizes a court to grant a money judgment "as an adjustment of the equities and rights of the parties concerning marital property." *See* Md. Code, Courts and Judicial proceedings, § 3–6A–05. No similar authority exists in Arizona. In *Daniels*, the Missouri court of appeals was not faced with a statutory restriction, such as A.R.S. § 25–318(A), in awarding the marital property, but was free to apply common law principles to the facts before it.

Moreover, a further review of the case law from non-community property states on this issue reveals a number of cases in opposition to the dissent's position. For instance, in *In re Marriage of McManama*, 272 Ind. 483, 399 N.E.2d 371 (1980), the Indiana Supreme Court held that a divorce court had no authority to make an award over the value of the marital assets at dissolution under a state statute directing the courts to divide the property of the parties "in a just and reasonable manner," after taking into consideration "the conduct of the parties during the marriage as

related to the disposition or dissipation of their property." *Id.* at 399 N.E.2d 372–73. In so holding, the supreme court overturned a lower court's ruling that the statute authorized repayment to an aggrieved party for property dissipated by the other spouse. The supreme court concluded that "the statute can only affect marital assets in which a vested present interest exists at the time of dissolution." *Id.* at 373.

Further, we note that in the case of *In re Marriage of Lippert*, 627 P.2d 1206 (Mont. 1981), the Montana Supreme Court, under facts very similar to those in the present case, held that the trial court exceeded its authority under the state's divorce statute by awarding one spouse property in excess of the marital estate's net worth. The court stated:

> The statute mandates "[t]he court shall also consider the contribution or dissipation of value of the respective estates ...;" however, the District Court's power does not extend beyond the existent estate. *In other words the District Court may never award more than 100 percent of the marital estate.*

*Id.* at 1209. (Emphasis added.)

Finally, and perhaps most importantly, is our fundamental concern over resorting to the law of non-community property jurisdictions to interpret our own statutes. These property regimes are essentially alien to our own and the conflicting ramifications from such comingling could easily give rise to confusion. For instance, we fail to see how the rules from non-community property states permitting a separate money judgment against one spouse *in excess of the existing marital estate* can be reconciled with the rigid distinction made by almost all community property states between separate and community property. *See Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982). Such judgments would, by necessity, be paid from one spouse's separate property. Yet, as in most community property states, courts in Arizona have no *jurisdiction* to award a portion of one spouse's separate property to the other as

part of a property division under § 25–318(A). *Rickman v. Rickman,* 124 Ariz. 507, 605 P.2d 909 (App.1980); *see also Proffit v. Proffit,* 105 Ariz. 222, 462 P.2d 391 (1969); *Armstrong v. Armstrong,* 71 Ariz. 275, 226 P.2d 168 (1951); *Warren v. Warren,* 2 Ariz.App. 206, 407 P.2d 395 (1965). Jurisdiction with respect to separate property is limited to assigning to each spouse his or her separate property under § 25–318(A) and impressing a lien pursuant to § 25–318(C) in order to enforce the terms of the property division. *Weaver v. Weaver,* 131 Ariz. 586, 643 P.2d 499 (1982).[6] Because of a similar restriction, the courts of Texas expressly forbid separate money judgments against a spouse in a dissolution proceeding unless they represent property in existence at the time of dissolution; otherwise, such judgments are held to be invalid awards of one spouse's future separate income. *See e.g. Frausto v. Frausto,* 611 S.W.2d 656 (Tex.Civ.App.1980); *Garrett v. Garrett,* 534 S.W.2d 381 (Tex.Civ. App.1976).

The only decision from a community property state cited by the dissent, *Counts v. Counts,* 75 Or.App. 30, 704 P.2d 1157 (1985), is totally inapposite to the case at hand. The holding in *Counts* relies upon a statute unique to Oregon which expressly authorizes the courts to divide not only the parties' marital assets, but also "the real or personal property, or both, of *either or both of the parties.*" *See* O.R.S. § 107.105(1)(e) (emphasis added). Under this section, a spouse's sole and separate property is available for equitable distribution by the courts even though it was owned prior to the marriage or was received by gift or inheritance. *Pierson v. Pierson,* 294 Or. 117, 653 P.2d 1258 (1982). Such a statutory scheme is clearly contrary to the law in Arizona. *See* A.R.S. §§ 25–211, 213, 318.

While we may agree with the dissent that such restrictions on the trial court may lead to inequitable results in certain cases, it is not within our province to rewrite the statutory law. Any perceived unfairness should be presented to the legislature for its appropriate consideration.

## IV.

■ Husband next argues that the trial court's second judgment against him for $9,473 also exceeded the trial court's authority. We agree.

The trial court's purpose in making this second award to wife was apparently to award her judgment in an amount equal to the funds which were on deposit in four joint savings accounts prior to trial. These funds were depleted before trial by husband to pay pretrial spousal maintenance and wife's attorney's fees pursuant to a court order. The $9,473 thus represents the total funds on deposit in these accounts prior to their depletion. Husband complains that the judgment compels him to replenish these accounts for monies he has already paid to wife and thus forces him to make these payments twice. Wife never really addresses this issue, stating only that the judgment is justified by husband's allegedly improper withdrawals prior to trial.

Without addressing husband's contention that he is being forced to make these payments twice, we find that the judgment is improper because it represents an award of funds that no longer existed. Indeed, the funds were openly depleted at the direction of the trial court itself. The record shows that, prior to trial, the court entered the following order:

> The Respondent, Richard George Martin, shall pay to Petitioner, Mary Maxine

6. The dissent asserts that such a narrow interpretation of § 25–318(A) might encourage parties to conceal or divest themselves of assets prior to dissolution so as to distort the true value of the marital estate. However, we find that such a threat is minimized, at least as far as concealment of community assets is concerned, by § 25–318(B) which gives each spouse an automatic undivided one-half interest in any community, joint tenancy, or other commonly held property not provided for in the decree. Thus, a spouse has a legally enforceable interest in such property even though it may be concealed. Should a spouse subsequently discover such property, he or she may enforce his or her interest through independent legal action.

Martin, the sum of $1,725.00 per month as temporary spousal maintenance during the pendency of this action. At times, amounts above $1,000.00 will be drawn from the joint savings account of the parties.

The court later ordered husband to pay wife an additional $2,500.00 for her attorney's fees during the pendency of the action.

Our review of the record shows that husband acted properly and in compliance with the court's orders in withdrawing permissible amounts from the four savings accounts to make these payments. We therefore find that the trial court exceeded its authority when it awarded wife the second judgment for $9,473 as it represents assets that obviously did not exist at the time of dissolution.

## V.

■ Lastly, husband argues that the trial court erred in awarding wife $2,000 a month for spousal maintenance. He contends that this amount is far too large given that wife is a registered nurse and that she received property capable of producing income of at least $15,000 a year. We disagree.

On appeal, we will sustain an award of spousal maintenance if there is any reasonable evidence to support it. *Thomas v. Thomas*, 142 Ariz. 386, 690 P.2d 105 (App. 1984); *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (App.1981). There was clearly sufficient evidence to support the trial court's award in this case.

At the time of trial, wife was 61 years of age with only a scant and sporadic history of part-time work in the nursing profession. It was reasonable to conclude from these facts that any income wife could derive from her efforts as a nurse would be negligible. Further, even assuming that the property awarded to wife is capable of producing $15,000 of income per year, we still find no abuse of discretion in the trial court's award. During the pendency of this action, wife was receiving temporary maintenance of $1,725 per month, or nearly $21,000 a year. While she testified that she "made do" with this amount, she had requested $2,500 per month as necessary spousal support. Further, the parties enjoyed a long marriage during which time they achieved a comfortable standard of living, and husband is relatively young, in good health, and has a high earnings potential.

We therefore find that the trial court acted within its discretion when it awarded wife $2,000 a month for spousal maintenance. Moreover, given the fact that our holding in this case will substantially reduce the amount of property awarded to wife, a larger spousal maintenance award may be justified on remand depending upon the circumstances existing at that time.

## CONCLUSION

For the foregoing reasons, this case is remanded for entry of a revised judgment consistent with this opinion, together with such further proceedings, findings, and orders which the trial court deems necessary to adjust the rights and obligations of the parties in order to achieve a just and equitable result.

Given the substantial property distributed to each party in this case, in the exercise of our discretion, we deny the parties' respective motions for attorney's fees on appeal.

Reversed in part and remanded.

FROEB, J., concurs.

GRANT, Presiding Judge, concurring in part; dissenting in part.

I dissent only from part III of the majority opinion which holds that the trial court lacked the authority to award the wife a $46,688 money judgment. The majority, in so holding, claims the trial court divided property which no longer existed at the time of dissolution and therefore exceeded its authority under A.R.S. § 25–318(A)

(court's authority is limited to a division of the community assets and liabilities existing at the time of dissolution). I do not believe the statute should be so narrowly construed where one spouse has total control of the marital assets and income. *See Counts v. Counts*, 75 Or.App. 30, 704 P.2d 1157 (1985). In formulating a property settlement a trial court may properly consider property once held by the parties but dissipated as of the date of dissolution. *See A.I.D. v. P.M.D.*, 408 A.2d 940 (Del.Supr. 1979). This is particularly true where the property has been dissipated for the sole benefit of the spouse who had control of it. *Id.*

In the case before us the husband has clearly indicated that the property from which the $46,688 was awarded was dissipated almost entirely for his benefit. The evidence as shown by joint income tax returns was that the parties' gross income during the period from separation to dissolution was $252,882. Nevertheless, in addition to the amount necessary to make the mortgage payments on the Prescott condominium, the wife received only $14,343 from the husband during this three year separation period. The husband was able to account for only $139,717 of the $252,882.

I cannot agree with the majority opinion's narrow construction of the statute which might "encourage parties to secrete, conceal or otherwise divest themselves of assets during the period between separation and divorce so as to distort the true nature and value of marital property." *Melnik v. Melnik*, 413 N.E.2d 969, 973 (Ind. App.1980) (quoting *Eppley v. Eppley*, 168 Ind.App. 59, 67, 341 N.E.2d 212, 218 (1976)).

The majority holding also ignores the portion of A.R.S. § 25–318(A) which states: "Nothing in this section shall prevent the court from considering excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common." Implied in that section of the statute is authority for the trial court to award an amount to one spouse equal to one-half of the dissipated assets. The non-existence of marital property does not preclude satisfying such an award out of sole and separate assets or even future income. *A.I.D. v. P.M.D.*, 408 A.2d at 943.

It is within the equitable power of the trial court to make property awards where one party has squandered, wasted or dissipated all of the presently available marital property to the exclusion of the other party. *Id.* The Delaware court in the aforecited case found that "[a]lthough the husband maintained an extremely extravagant standard of living and expended all of the funds ... the wife received very little benefit from these monies" and was forced to live at a substantially lower standard of living. *Id.* at 941. The court held that under such circumstances the trial court, in equitably dividing the marital property, was not restricted to a distribution of the then existing assets. *Id.* at 943. I believe that the trial court's money award to the wife was similarly justified here. Intentional dissipation or excessive spending of marital property may properly cause the dissipated property to be considered as extant marital property to be valued with other existing marital property. *See Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985). Likewise, a trial court should look through transparent maneuvers by the controlling spouse which are undertaken for the purpose of depriving the noncontrolling spouse of the benefit of marital funds. *See Daniels v. Daniels*, 557 S.W.2d 702 (Mo.App.1977).

We also are presented in this case with a problem of witness credibility. Witness credibility is best resolved by the trial court that viewed the witness. The husband's answers to questions about the dissipation of his income during the years of separation were equivocal, uncooperative and sometimes incredible. The trial court obviously considered the lack of assistance and cooperation of the husband in determining the net worth of the marital property at the

dissolution of marriage. Giving due consideration to the husband's evasiveness was proper. *See In Re Marriage of Lippert,* — Mont. ——, 627 P.2d 1206 (1981) (Sheehy, J., dissenting).

For these reasons I dissent from the majority's reversal of the $46,688 money judgment to the wife. I would affirm the trial court in all respects. I concur in all other portions of the majority opinion.